IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHAD BOUMAN,

                     Plaintiff,                      OPINION AND ORDER

      v.                                                07-C-367-C

S. ROBINSON, Unit Manager;
SPROUL, Unit Manager;
M. JACOBS, Correctional Officer;
R. MARTINEZ, Warden;
M. NALLEY, Regional Director, Federal Bureau of Prisons,
Kansas City, Kansas;
H. WATTS, Administrator, National
Inmate Appeals, Federal Bureau of Prisons,
Washington, D.C.,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Chad Bouman is a federal prisoner with many opinions, on topics as far ranging as politics, religion and even the Free Masons. After he gave a speech for a class at the prison in which he discussed negative aspects of freemasonry and identified several correctional officers as members, he was disciplined for "disruptive conduct." A few months later, plaintiff lost his prison job after he was found guilty of possessing unauthorized food in his cell. In this civil action brought under Bivens v. Six Unknown Named Agents of

1

Federal Bureau of Narcotics, 403 U.S. 388 (1971), plaintiff contends that defendants disciplined him in retaliation for giving the Free Masons speech, which, he says, was entitled to First Amendment protection.  In the order screening his complaint under 28 U.S.C. § 1915, I allowed him to proceed on claims that both acts of discipline violated his right to free speech.

Defendants advance two grounds in support of their motion for summary judgment, which is now before the court: (1) plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a); and (2) plaintiff's speech is not protected under the First Amendment because it does not touch on a matter of public concern. Because I disagree with defendants on both grounds, their motion for summary judgment must be denied.

Defendants' argument regarding exhaustion has multiple problems. First, defendants appear to believe that dismissal for failure to exhaust is appropriate for both of plaintiff's claims, but in their brief and proposed findings of fact, they say nothing about whether plaintiff exhausted his administrative remedies with respect to his claim that he was disciplined for giving the speech on Free Masons.  Because I cannot consider arguments that defendants failed to raise, I will limit my discussion to the question whether plaintiff satisfied § 1997e(a) with respect to his claim that defendants retaliated against him when they disciplined him for possessing contraband.

2

With respect to that claim, the record shows that plaintiff did raise the issue of retaliation during the grievance process. In challenging the discipline he received for possessing contraband, plaintiff wrote, "I am bringing before you . . . a simple case of discrimination. . . . I have become a 'special case' because of my beliefs [and] for my outspoken criticism. . . . This is why I have been singled out and have continued to be mistreated." Dkt. #31, exh. 4. Although plaintiff did not identify the Free Masons speech specifically, he "alerted prison officials to the nature of his problem and gave them an opportunity to resolve it," Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005), which is all he was required to do. E.g., Westefer v. Snyder, 422 F.3d 570, 580-81 (7th Cir. 2005) (prisoner satisfied exhaustion requirement for retaliatory transfer claim by "express[ing] concern [in grievance] about not being told the reason for his transfer"); Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004)(prisoner satisfied exhaustion requirements for sexual assault claim by writing in grievance, "the administration don't do there job. [A sexual assault] should've never happen again"). If prison administrators had wanted additional detail, they could have asked for it, but they did not.

In their brief, defendants point out that plaintiff did not raise this issue until his appeal; in his initial grievance he complained only that Bureau of Prisons policy did not support the decision to fire him from his prison job. This argument would be successful only if defendants could point to a rule of the Bureau of Prisons that prohibited plaintiff from

3

amending his grievance on appeal. As the Supreme Court has recognized, § 1997e(a) contains no rules regarding how a prisoner must present his grievance: "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 127 S. Ct. 910, 922 (2007). In other words, "[c]ompliance with prison grievance procedures . . . is all that is required . . . to 'properly exhaust.'" Id. at 922-23. Because defendants do not identify any prison rule that plaintiff violated, their argument fails. E.g., Thornton v. Snyder, 428 F.3d 690, 694 (7th Cir. 2005) (rejecting defendants' argument regarding failure to exhaust when they failed to point to prison rule that plaintiff failed to follow).

Even if a prison rule had required plaintiff to raise all issues in his initial grievance, the prison waived compliance with the rule by considering the newly raised issue on its merits. In the response to his appeal, the administrator rejected plaintiff's claim of retaliation, stating that the disciplinary decision "met the standards of fairness [and] impartiality." Dkt. #31, exh. 5. That was enough to relieve plaintiff of any requirement to file a new grievance: when a prison administrator overlooks a prisoner's violation of a grievance requirement "and resolves [the grievance] on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." Riccardo, 375 F.3d at 524.

Finally, I note that even if I agreed with defendants that the grievance it identified

4

was insufficient in some way, that would not be enough for them to prevail on their motion for summary judgment. Because failure to exhaust is an affirmative defense, defendants have the burden of proof on this issue. Jones, 127 S. Ct. at 919-22. To meet this burden, it is not enough for defendants to do what they did in this case, which is simply to identify one grievance they think is most relevant. The reason is straightforward: even if one grievance the plaintiff filed is insufficient, the plaintiff may have filed other grievances that satisfy the exhaustion requirement. Thus, defendants must adduce evidence showing that plaintiff filed no grievances on the issues giving rise to his claims in the lawsuit. Ordinarily, this is done by submitting an affidavit from a record keeper who has reviewed all of the prisoner's grievances in the relevant time frame and can testify about those grievances. If none exist, the record keeper may state this in his affidavit. Without this or similar evidence, a court cannot conclude as a matter of law that the plaintiff failed to exhaust his administrative remedies.

Defendants' alternative argument is that plaintiff's speech about the Free Masons did not raise an issue of public concern. McElroy v. Lopac, 403 F.3d 855 (7th Cir. 2005) ("public concern" limitation on free speech applies to prisoner claims). The problem with defendants' argument on this question is that they apply the meaning of "public concern" too narrowly. They rely incorrectly on Brookins v. Kolb, 990 F.2d 308 (7th Cir. 1990), for the proposition that a prisoner is not speaking on a matter of public concern unless he is

5

urging "a change in prison policy." Dkt. #26, at 10. In Brookins, the court identified such speech as an example of a matter of public concern, but it did not equate the two ideas. Pearson v. Welborn, 471 F.3d 732, 740-41 (7th Cir. 2006) (characterizing speech that "urge[s] a change of any prison policy" as "*an example* of what would be deserving of First Amendment protection") (emphasis added).

A "public concern" is essentially what it sounds like: the statement must be of some interest or significance to the "public" rather than a "personal grievance" of the speaker. Miller v. Jones, 444 F.3d 929, 935 (7th Cir. 2006); see also Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690 (1983) (speech may touch on matter of public concern if it relates to "any matter of political, social, or other concern to the community"). In the context of a prison, the "public" includes other prisoners, so that a statement may be a matter of public concern even if non-prisoners might not be interested in the matter. Pearson, 471 F.3d at 740-41 (concluding that statement was matter of public concern when it related to concern of "all . . . prisoners" in plaintiff's section of prison).

In this case, plaintiff gave a speech in which he expressed an opinion that the Free Masons is an influential group seeking "a new world order." In addition, he discussed "the dark side of freemasonry," including its alleged association with pagan religious beliefs. After identifying a number of correctional officers as members of Free Masons, plaintiff encouraged his audience "to further your knowledge of its purposes and practices." Dkt.

6

#28, exh. 2. Thus, the speech appears to be a cautionary message to other prisoners regarding the beliefs of the Free Masons and the prison officials who hold those beliefs. I agree with plaintiff that such a speech could be of significant interest to others in the prison. Further, it is similar to other speech that courts have found to be matters of public concern. E.g.,Bonds v. Milwaukee County, 207 F.3d 969, 973 (7th Cir. 2000) (statement at public meeting that city program was "sinister" and racially divisive). Certainly, there is no indication that plaintiff was simply airing a personal grievance, which is usually the reason for concluding that speech does not satisfy the "public concern" requirement. E.g., Brookins, 990 F.2d at 313 (speech not protected because it "dealt with a matter personal to" prisoner); Bigbee v. Nalley, 2007 WL 1502170, *2 (W.D. Wis. 2007) ("Petitioner's expression of displeasure at Benson's accusations that he is a thief is a matter of solely personal concern."). It may be that there were legitimate penological reasons justifying the censorship of the speech under the standard set forth in Turner v. Safely, 478 U.S. 82 (1987), but defendants do not advance such an argument.

Because the issues of exhaustion and the scope of plaintiff's free speech rights are the only two grounds on which defendants moved for summary judgment, defendants' motion must be denied. Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006) ("[I]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the

7

district court should not rely on that ground in its decision."). Unfortunately, however, defendants' motion leaves a number of factual questions unaddressed, although the record suggests that plaintiff may be unable to prove facts necessary to prevail on either of his claims. It is puzzling why defendants did not raise these issues in their motion.

With respect to plaintiff's claim that he was disciplined for giving the Free Masons speech in violation of the First Amendment, it is not clear whether any of the defendants was involved in that discipline. In his complaint, plaintiff alleged that defendant Martinez was responsible for his placement in segregation, but the disciplinary record does not appear to support that allegation. Rather, these records show that an officer named A. Salas prepared the incident report, J. Roebuck delivered it and Joletta Terrell found plaintiff guilty of disruptive conduct. Dkt. #28. The records do not show that defendant Martinez ordered plaintiff's placement in segregation or that any of the other defendants was responsible for his discipline. If they were not involved, they cannot be held liable for this claim, even if one of the defendants was the supervisor of someone who was involved. Galdikas v. Fagan, 342 F.3d 684, 693 (7th Cir. 2003) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation.")

A separate but equally serious problem exists with respect to plaintiff's claim that defendants disciplined him several months later for possessing contraband in retaliation for his speech. As I explained to the parties in the screening order, to prevail on this claim

8

plaintiff will have to show that each of the defendants was motivated by plaintiff's speech when they disciplined him. Although defendants did not move for summary judgment on this ground, plaintiff did address the issue in his brief and proposed findings of fact. He pointed to two pieces of evidence: (1) his own declaration, in which he avers that defendant Jacobs told him just before searching his cell "that he got a phone call from a higher staff member to search my room, and to write an incident report on anything he found," dkt. #39, exh. E; and (2) the declaration of another prisoner, who avers that he received significantly less serious sanctions when he was disciplined for possessing contraband, dkt. #39, exh. D. (Plaintiff also says generally in his proposed findings of fact that the loss of his job was an unusual sanction, but he does not support this assertion with admissible evidence. The facts show that plaintiff's cell mate received the same punishment that plaintiff did. Dkt. #30, exh. 2).

This evidence would not be sufficient to support a verdict in plaintiff's favor. Plaintiff's first piece of evidence is simply too vague and ambiguous to suggest retaliatory intent by any of the defendants. Even if defendant Jacobs made the statement (Jacobs denies that he did), the statement does not say why plaintiff's cell was being searched or, even more important, *who* was ordering the search. A jury would have to pile one speculation on top of another in order to conclude that one of the other defendants ordered the search, that the defendant or defendants knew about plaintiff's Free Masons speech and that it was

9

the speech rather than an interest in detecting contraband that motivated the decision to search his cell. A reasonable jury could not come to such a conclusion. Davis v. Carter, 452 F.3d 686, 697 (7th Cir. 2006) ("[W]hen the evidence provides for only speculation or guessing, summary judgment is appropriate.")

I discussed plaintiff's second piece of evidence in the screening order (because he had attached it to his complaint) and I told him that it would not be sufficient to prove retaliation at summary judgment or trial because it was missing too many relevant facts to be probative. I repeat now what I said then:

> Petitioner is on the right track: one way of proving a retaliation claim is to show that others received more favorable treatment. Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006). But there is a significant limitation on this method of proof. Petitioner must show that he and those receiving more favorable treatment are "similarly situated." Humphries v. CBOCS West, Inc., 474 F.3d 387, 404-06 (7th Cir. 2007). In the context of this case, this means that petitioner will have to show that both he and the other prisoners were disciplined by respondents. If other officials besides respondents gave other prisoners more lenient sentences, this sheds no light on whether respondents were singling out petitioner for harsher treatment; it may well be that respondents consistently impose more significant penalties for misconduct. In addition, petitioner will have to show that he and the other prisoners had a similar disciplinary record and were involved in the same conduct under similar circumstances.

Order dated Aug. 10, 2007, dkt. #3. Plaintiff did not address any of these deficiencies in the declaration. Instead, he simply resubmitted the same document.

Although it would be unfair to grant summary judgment to defendants without notice to plaintiff, there is no point in proceeding to trial on claims that cannot survive a motion

10

for judgment as a matter of law. Accordingly, I will give plaintiff an opportunity to submit evidence on the following issues:

(1) whether any of the defendants was involved in disciplining him for giving his speech on Free Masons; and

(2) whether any of the defendants was motivated by plaintiff's speech on Free Masons when they disciplined him for possessing contraband.

Any evidence submitted by plaintiff must conform to the requirements of Fed. R. Civ. P. 56 and this court's Procedure to be Followed on Motions for Summary Judgment, which was provided to plaintiff with the magistrate judge's preliminary pretrial conference order and again when defendants moved for summary judgment. If plaintiff does not respond to this order by the deadline, I will grant summary judgment to defendants on the court's own motion for plaintiff's failure to prove his claims.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Robinson, Sproul, Jacobs, Martinez, Nalley and Watts is DENIED.

2. Plaintiff Chad Bouman may have until July 16, 2008, to file with the court and serve on defendants evidence showing: (1) that defendants were involved in disciplining him

11

for giving his speech on Free Masons; and (2) that defendants were motivated by plaintiff's speech on Free Masons when they disciplined him for possessing contraband. Plaintiff need not submit proposed findings of fact, but he may submit a brief explaining how his evidence supports his claim, if he wishes. If plaintiff does not respond by July 16, I will grant summary judgment to defendants.

Entered this 27th day of June, 2008.

BY THE COURT:

*Barbara B. Crabb*

_____
BARBARA B. CRABB
District Judge

12